**STATE of Tennessee, Appellee,**

v.

**Jimmy CADLE, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 8, 1982.

J. Andrew Hoyal II, Asst. Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., Sevierville, Richard Scroggins, Asst. Dist. Atty. Gen., Dandridge, for appellee.

A. Benjamin Strand, Jr., Dandridge, for appellant.

OPINION

DAUGHTREY, Judge.

The appellant-defendant, Jimmy Cadle, was charged in two separate indictments with the sale of controlled substances. The two charges were tried at the same time,

resulting in guilty verdicts and the imposition of two consecutive four year sentences. On appeal Cadle raises multiple issues for our review, the most crucial of which stem from a violation of Rule 16(a)(1)(A). For the reasons stated below, we remand the case for a new trial.

The proof at trial showed that the two drug sales in question were made by Cadle to an undercover narcotics agent, Mack Smith, who had been introduced to the defendant through an area informant, Terry Lyle. Lyle was allegedly present at the first sale of 50 methaqualone (Quaalude) tablets which occurred in the defendant's trailer home. According to Smith, he contacted the defendant by telephone four days later and arranged for a similar buy of 50 Quaaludes, which also occurred at Cadle's residence, on this occasion in the presence of the defendant's live-in girlfriend, Penny Reneau.

Cadle took the stand in his own defense, and, while admitting that he had a "drug and alcohol problem" and had possessed small amounts of drugs for his own use in the past, he denied making any sales to Mack Smith. He also denied having ever met the agent or having talked to him on the telephone. Penny Reneau likewise testified that she had never met Smith nor witnessed a drug sale by Cadle to Smith.

In rebuttal, the State was permitted to introduce through agent Smith a tape-recorded telephone conversation supposedly held between Smith and Cadle a month after the two sales occurred. On surrebuttal Cadle testified that it was not his voice on the telephone, but he was prevented from calling Penny Reneau to testify to the same effect.

It is the introduction of the taped telephone conversation which, under the circumstances, has produced reversible error in this case. The defendant had filed a pre-trial discovery motion under Rule 16(a)(1)(A), Tennessee Rules of Criminal Procedure, seeking (among other items) the disclosure of any written or recorded statements made by him to any state representative. The assistant prosecutor responded by letter three weeks prior to trial, saying that he was "unaware of any statements, as such, made by the defendant." But according to statements made by the District Attorney on the morning of trial, undercover agent Mack Smith had recalled making the tape recording of his conversation with Cadle only the night before trial and searched through his records to locate it. He turned it over to the prosecutor while the jury was being selected. After jury selection was completed, but before the jury was sworn, the District Attorney informed defense counsel of the tape's existence. The prosecutor, the defense attorney, and the defendant then retired from the courtroom to listen to the tape. After hearing the recording, the defendant told his lawyer that it was not his voice on the tape.

Returning to the courtroom, the defense attorney claimed violation of Rule 16 and requested a continuance, saying that he wished to investigate the legality of the recording, as well as its authenticity. He notified the court that his client maintained that the voice on the tape was not his, and he suggested to the court that he wished to inspect the tape more closely and perhaps secure voice analysis in an effort to disprove its authenticity.

The trial court decided that the State had indeed violated Rule 16 and therefore could not introduce the tape as part of its case-in-chief. However, the trial judge ruled that the recording could be used for impeachment purposes. The State now argues that this restriction, together with the fact that the defendant had the opportunity to hear the tape before it was played to the jury and the opportunity to cross-examine the witness who introduced it, was a sufficient sanction and contends that under Rule 16(d)(2), the trial judge did not abuse his discretion in this regard.

Rule 16(d)(2), governing failure to comply with a request for pre-trial discovery, provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to

comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

From a reading of the rule, it becomes obvious that the sanction to be applied for non-compliance must fit the circumstances of the individual case. Thus, in some instances mere inspection, coming even as late as it did in this case, may serve to protect the defendant's interests. In other situations, a continuance may be required to give the accused a chance to meet the State's previously undisclosed evidence, or the court may be required to exclude the evidence altogether. The suitability of an individual alternative will always depend on the nature of the statement and the basis upon which it is being challenged.

Thus, in *United States v. Fogelman*, 586 F.2d 337 (5th Cir. 1978), the trial court partially suppressed an undisclosed tape recording of the defendant's marijuana-related conversation with an informant, disallowing its use during the government's case-in-chief. The court permitted use of a transcript of the tape for impeachment purposes, however, after the defendant testified that his acquaintance with the informant was superficial only and did not involve marijuana. The reviewing court upheld this ruling, holding that a procedural shield should not be perverted into a license to engage in perjury, *provided that the trustworthiness of the evidence is not in question.*

■ In this case, by contrast, the defendant called into question the trustworthiness of the evidence, *i.e.*, its authenticity, as soon as he learned of its existence, requesting a continuance at a timely point prior to the swearing of the jury and the commencement of the trial. The trial judge denied the continuance, telling defense counsel, "[Y]ou could only be in a

much worse position when it [the trial?] came back.... If it were tried tomorrow or next week, then you would be on full notice. You would have no objection whatsoever. It would be admissible...."

This was the only reason given by the trial judge for denying a continuance, and, of course, it begs the question. For by giving defense counsel a continuance, the trial judge would indeed have guaranteed the defendant "full notice" of the content of the recording, a right which is provided him under Rule 16(a)(1)(A), and would thus have avoided any objection to the introduction of the recording at the rescheduled trial.

To compound the problem, the trial court allowed the undercover agent to testify that in his opinion, based on only one prior telephone conversation with the defendant, it was Cadle's voice at the other end of the recorded conversation. But the court barred defense testimony by a witness much more familiar with the defendant's telephone voice to the effect that the voice on the recording was not Cadle's. Thus, we conclude that the defendant was improperly prevented from meeting evidence which was presented against him at the last minute and which he was unable to rebut other than through his own uncorroborated denial. *See generally Stroup v. State*, 552 S.W.2d 418, 420 (Tenn.Cr.App.1977); Annot., 70 A.L.R.2d 995.

There can be little doubt that the tape recording in this case was crucial evidence against the defendant. As his own attorney characterized the lawsuit, it amounted to a "swearing contest" between Cadle and Smith, tried in the absence of a material witness to one of the sales, informant Terry Lyle.* It cannot be doubted that under these circumstances the tape recording which purported to be a drug-related conversation between Cadle and Smith took on critical importance in the jury's determination.

* Lyle was listed on the indictment as a witness for the State, but he was imprisoned in another county on the day of trial and was not called.

We conclude that the sanction imposed under Rule 16(d)(2) in this case was inadequate and that the trial court should have granted the defendant's timely motion for a continuance, or, in the alternative, should have suppressed the tape recording altogether. Moreover, given the partial suppression, we hold that it was error to have prevented the defendant from calling Penny Reneau in an effort to refute the rebuttal evidence offered by the State. Under the totality of the circumstances, we find that the cumulative effect of these errors was to deprive the defendant of a fair trial, and we conclude that a retrial is required.

As a result, we find it unnecessary to address in great detail many of the remaining questions raised on appeal. The defendant claims for example, that because he had no knowledge of what the State's proof would show, he should have been allowed to reserve his opening argument until the close of the State's proof. As the State points out, there is no Tennessee authority for this procedure. But more importantly, on retrial the defendant will presumably be fully apprised of the State's case against him, and the issue is therefore moot.

The defendant further complains that the trial judge failed to give the so-called "missing witness charge" concerning Terry Lyle. The trial judge incorrectly ruled that Lyle was "not a witness to the transaction" when the proof showed clearly that he introduced Smith to Cadle and was present during the first of the two drug sales. Under these circumstances, we reject the State's argument that Lyle had no peculiar knowledge of the offense and that his testimony would be merely cumulative to that of Smith. In a case involving an alleged drug sale to an undercover agent which the defendant maintains never occurred, an eyewitness to the event can scarcely be said to be merely a cumulative witness.

The trial judge also ruled incorrectly that Lyle was equally available to both the State and the defense, "[because] he is now in the penitentiary." See State v. Jones, 598 S.W.2d 209, 224 (Tenn.1980), in which the court concluded that a defendant is under no obligation to call an incarcerated witness whom the State has paid to build a case against him. The trial judge did note, correctly, that Lyle's name was not listed on the indictment as a witness for the State. However, in his letter to defense counsel three weeks prior to trial, the Assistant District Attorney had requested counsel to "[p]lease add Terry Lyle's name as an additional State's witness." On retrial, and assuming the renewal of the defendant's special request, the necessity of charging the missing witness instruction should be reviewed in light of the full record and relevant legal principles.

We think the trial court should also reconsider its determination that the defendant's two sentences must be served consecutively, in the event that he is again found guilty of both charges. In the course of the sentencing hearing in this case, the trial court labelled Cadle a "persistent criminal," even though the defendant had no prior convictions and clearly did not fall into the persistent offender category as it is defined in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976).

Instead, the trial judge appears actually to have found that Cadle had derived his livelihood from the sale of drugs, saying, "He's a major livelihood. Major activity, unable to work, strung out on drugs." Thus, the court in effect held that Cadle was a professional criminal under Gray. But in order to classify a defendant as a professional criminal, the court must find that the defendant is "not likely to be rehabilitated." Id. at 393. Here the court found, to the contrary, that Cadle was "straight" at the time of the hearing and that he was undergoing treatment. Hence, the trial judge's expression of optimism for the prospect of Cadle's rehabilitation suggests that the court improperly invoked consecutive sentencing.

The record further tends to indicate that the court's central concern in ordering consecutive sentences was to deter the "druggies watching this proceeding . . . ." However, general deterrence (i.e., deterring others) is not a proper consideration under

*Gray*, which mandates only that the judge determine whether "confinement for such a [consecutive] term is necessary in order to protect the public from further criminal conduct by the defendant." *Id.* at 393.

 Contrary to the defendant's final contention, the trial court did not err in considering testimony concerning the fruits of an illegal search and hearsay testimony concerning information gathered from confidential sources. In holding that the Fourth Amendment exclusionary rule does not apply to grand jury proceedings, the United States Supreme Court in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), suggested that the exclusionary rule should not be applied in every type of criminal proceeding, but only in those in which it can effectively serve to deter government misconduct. Thus, it has been held that the exclusionary rule will be applied to the sentencing process only when when it can be said to have potential for the deterrence of Fourth Amendment violations. *Verdugo v. United States*, 402 F.2d 599, 611–13 (9th Cir. 1968). *Accord United States v. Larios*, 640 F.2d 938, 941–42 (9th Cir. 1981); *United States v. Lee*, 540 F.2d 1205, 1211 (4th Cir. 1976), *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177; *United States v. Schipani*, 435 F.2d 26, 28 (2nd Cir. 1970). Language from *State v. Mackey*, 553 S.W.2d 337, 344 (Tenn. 1977), likewise indicates that the exclusionary rule will not necessarily be applied in Tennessee sentencing procedures. In *Mackey* the court set standards for the submission of guilty pleas, noting that "[a]ny . . . evidence that the court deems to be trustworthy and probative may be received, regardless of its admissibility under exclusionary rules of evidence." *Id.*

This pronouncement by the *Mackey* court leads us to a similar conclusion that hearsay evidence may be considered by the trial court in determining sentencing questions. *See also Williams v. New York*, 337 U.S. 241, 250–51, 69 S.Ct. 1079, 1084–1085, 93 L.Ed. 1337 (1949). The principle limitation on the trial court's discretion in this area is that it may not consider materially false information. *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *State v. Mackey, supra.* Hence, in order to exclude hearsay testimony, defense counsel must affirmatively attack the reliability of that evidence.

For the reasons stated above, the judgment of the trial court is reversed and the case is remanded for a new trial.

DUNCAN and SCOTT, JJ., concur.