IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## STATE OF TENNESSEE v. LEON GOINS

**Direct Appeal from the Circuit Court for Dyer County**
**No. C98-204    Honorable Russell Lee Moore, Jr., Judge**

---

**No. W1999-00157-CCA-R3-CD - Decided May 2, 2000**

---

A jury found the defendant guilty of selling 0.5 grams of cocaine, a Schedule II controlled substance. He received a 15 year sentence as a Range II offender, consecutive to a prior felony. The defendant asserts error in allowing the state's expert witness to testify to the aggregate weight of cocaine sold, when the witness did not test every particle of the submitted evidence. The defendant further asserts error in the trial court's admitting a video tape of the sale and in the trial court's sentencing. The judgment from the trial court is affirmed.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAMS, J., delivered the opinion of the court, in which WADE, P.J., and OGLE, J., joined.

Clifford K. McGown, Jr., District Public Defender, and Howell Tod Taylor, Assistant District Public Defender, Waverly, Tennessee, for the appellant, Leon Goins, on appeal.
Jim W. Horner, District Public Defender, Dyersburg, Tennessee, for the appellant, Leon Goins, at trial and of counsel on appeal.

Paul G. Summers, Attorney General and Reporter, Patricia C. Kussmann, Assistant Attorney General, and Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant appeals his conviction and sentencing from a Dyer County jury verdict of selling 0.5 grams of a Schedule II controlled substance. The defendant had been indicted on two separate Schedule II offenses, allegedly occurring with a codefendant on February 12 and February 19, 1998. The trial court declared a mistrial regarding the February 19 offense and granted the codefendant's motion for acquittal. The jury returned a guilty verdict against the defendant for the February 12 offense, and the trial court imposed a 15 year sentence as a Range II offender, to be served consecutively to a prior sentence for a felony conviction. He asserts that the trial court erred by:

(1) allowing the state's expert witness to testify to the aggregate weight of the cocaine from the transaction when that witness did not test every particle comprised by the submitted evidence;

        (2) allowing video tapes of the transaction; and

        (3) sentencing the defendant.

We affirm the judgment and sentence from the trial court.

## FACTS

From a jury's guilty verdict, we review the evidence in a light most favorable to the state. On February 12, 1998, Officer Jim Porter of the Dyersburg Police Department, working with an undercover agent and with a confidential informant, conducted an undercover narcotics transaction. After the police installed a video camera and audio transmitter inside the informant's vehicle, they gave the agent $100 to purchase drugs. Officer Porter followed the operatives to monitor and record audio transmissions.

The operatives went to an apartment on Kist Street seeking cocaine, and there the defendant said that he could get them some cocaine. On the defendant's instructions, they followed his vehicle to another street and parked. The defendant left in his vehicle and shortly returned with another man and a woman. He gave the undercover agent one rock of crack cocaine in exchange for $50. When Jones asked for another $50 rock, the defendant stated that he could get it. He left in his vehicle and returned with another rock of crack cocaine for the agent.

The video tape from the truck shows the defendant's initial contact with the operatives as he returned with the cocaine, his leaving for another rock of cocaine, and his bringing that second rock to the vehicle. Defense counsel sent an investigator with a blank videotape to the police department for a copy of the videotape of the two transactions. Apparently, the police officer inadvertently recorded the second transaction over the latter part of the first transaction. We discuss particulars of that recording in our subsequent analysis.

Lisa Mays, a forensic scientist in drug analysis for the Tennessee Bureau of Investigation (TBI), testified at trial and described her analysis of the substance. Again, we review those facts in more detail in the subsequent discussion.

## ANALYSIS

### Expert Testimony as to the Weight of the Cocaine

The defendant was convicted of selling 0.5 grams of cocaine, a Schedule II controlled substance. See Tenn. Code Ann. § 39-17-408(a)(b)(4). A sale of cocaine in the amount of at least 0.5 grams constitutes a Class B felony offense, whereas a sale of under 0.5 grams is a Class C offense. See Tenn. Code Ann. § 39-17-417(c)(1),(2). "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," Tenn. R. Evid. 702, and the defense stipulated that

Mays was an expert in drug analysis. Regarding the evidence for the February 12 transaction, Mays testified that she did not conduct confirmatory tests on each of the eight fragments and smaller "crumbs" in the evidence container submitted for analysis, and the defendant alleges that the trial court erroneously allowed her testimony as to the aggregate weight of the evidence.

"In general, questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court." See McDaniel v. CSX Transp., Inc., 955 S.W.2d 257, 263 (Tenn. 1997). "The court shall disallow testimony in the form of opinion or inference if the underlying facts or data indicate lack of trustworthiness." See Tenn. R. Evid. 703. The instant issue does not challenge the chemical basis of the analysis but rather whether the state's witness should be required to test each and every fragment as a controlled substance before testifying as to the aggregate weight of the evidence.

Our review of the record, however, discerns no motion to bar testimony regarding the allegedly under-inclusive testing. After the defendant elicited testimony on cross-examination that the relevant evidence was not intact and consolidated in one fragment, he did not pursue any objection to the evidence. The defendant therefore waived any objections as to the admissibility of the expert testimony, see Tenn. R. App. P. 36(a); State v. Killibrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988), and the accuracy of the test became a jury question, see State v. Copeland, 677 S.W.2d 471, 474 (Tenn. Crim. App. 1984). The issue is a challenge against the sufficiency of the evidence: Did the state prove that the cocaine weighed at least 0.5 grams and thereby constituted of a Class B, versus a Class C, felony offense? See Tenn. R. App. P. 13(e).

**Sufficiency of Evidence**

We address the defendant's sufficiency of the evidence question under our well-established standard of review. When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." See Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this Court neither reweighs nor reevaluates the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This Court may not substitute its inferences for those drawn by the trier of fact from circumstantial evidence. See Liakas v. State, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the party prevailing at trial the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. See State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of facts, not this Court. Id. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Because a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

Tests on discrete units or samples of alleged controlled substances are generally a sufficient basis for an expert witness's conclusions regarding the total weight of that sample. See State v. Holbrooks, 983 S.W.2d 697 (Tenn. Crim. App. 1998); Copeland, 677 S.W.2d 471; State v. Selph, 625 S.W.2d 285 (Tenn. Crim. App. 1981). For example, expert testimony that five of approximately 5000 tablets each contained approximately three hundred milligrams of methaqualone, a controlled substance, sufficiently established that the totality of the tablets comprised at least 1140 grams of methaqualone. See Selph, 625 S.W.2d at 286. A panel of this Court rejected the Selph defendant's assertion that the testing procedure provided insufficient evidence that he sold over two hundred grams of methaqualone.[1]

Similarly, in the more recent case of Holbrooks, the forensic scientist testified that she chemically tested eight of fifty-one rocks of cocaine, and each of these rocks tested positive for that controlled substance. See Holbrooks, 983 S.W.2d at 699. She also confirmed the similarity of all the rocks by visual examination. See id. This testimony was sufficient to enter the weight of the total submitted evidence as cocaine, thereby allowing the jury to find, beyond a reasonable doubt, that the defendant sold in excess of the contested amount of twenty-six grams of cocaine.[2] See id. at 702.

In Copeland, 677 S.W.2d 471, the forensic scientist testified that he chemically tested only thirty-nine tablets for methaqualone out of a total of over 2900 alleged quaalude tablets. See id. at 474. He visually determined that all the tablets had the outward characteristics of quaalude tablets. See id. Although the Copeland defendant characterized the testing procedure as "grossly inadequate," a panel of this Court concluded that the positive results on the sample tablets allowed all the tablets to be considered in calculation for the total weight of controlled substance. See id. "The weight to be given to the testimony . . . was a question for the jury," and the evidence was sufficient for that jury to conclude that the defendant sold over two hundred grams of the controlled substance. Id.

In the instant case, Mays testified that the evidence packet contained approximately eight rocks with some smaller crumbs, and before analyzing any of the submitted substance she removed

---

[1] The defendant contested this amount because a sale over two hundred grams constituted a Class X offense, with substantially enhanced penalties, under applicable law. See Tenn. Code Ann. § 52-14-32(c)(1)(repealed 1989). See id.

[2] The defendant actually attacked the procedure regarding the subtraction of the weight of the packaging material from the total weight of controlled substance; nevertheless, the holding accredited the general random testing procedure. See id.

it from the packaging and determined the overall weight.  She then performed a screening test, followed by a confirmatory test to establish what controlled substance was present.  Rather than test every rock of cocaine submitted in the sample, she tested a random sample of four to five rocks of the substance and visually inspected all rocks to ensure their similarity.  The sample weighed 0.59 grams.  She testified that the rocks tested positive for the presence of cocaine.  She also testified that the rocks were fragile and often crumbled during examination.

We do not find that the defendant satisfies his burden for overturning the jury verdict, and therefore, this issue has no merit.


### Admission of the Video Tape of the Transactions

The defense counsel attempted to obtain a copy of the video tapes of both transactions, but the police officer copying the tapes mistakenly copied the later transaction over the middle portion of the prior.  The defendant alleges that the state thus violated the Tennessee Rules of Criminal Procedure:

> Upon request of the defendant, the state shall permit the defendant to inspect and copy or photograph . . . tangible objects . . . within the possession, custody or control of the state, and which are material to the preparation of the defendant's defense or are intended for use by the state as <u>evidence in chief at the trial</u>.

<u>See</u> Tenn. R. Crim. P. 16(a)(1)(C).[3]  The defendant argues that state's tapes of the transactions were therefore inadmissible.

Failure by either party to comply with the cited discovery rule authorizes the court to take action that "it deems just under the circumstances," <u>see</u> Tenn. R. Crim. P. 16(d)(2), and sanction is a potential consequence for discovery violations, <u>see</u> <u>State v. Freseman</u>, 684 S.W.2d 106 (Tenn. Crim. App. 1984).  Applied sanctions must fit the circumstances of individual cases, <u>see</u> <u>State v. Cadle</u>, 634 S.W.2d 623 (Tenn. Crim. App. 1982), and evidence should not be excluded except if: (1) a party is actually prejudiced by the failure to comply with the discovery order; and (2) the prejudice can not be otherwise eradicated, <u>see</u> <u>State v. Garland</u>, 617 S.W.2d 176, 185-86 (Tenn. Crim. App. 1981).

Admissibility of evidence is within the realm of the sound discretion of the trial court.  <u>See</u> <u>State v. McLeod</u>, 937 S.W.2d 867, 871 (Tenn. 1996).  In the instant case, the defendant entered his motion during preliminary matters on the first day of the trial.  The trial court denied that motion, and the defendant made an offer of proof.  The trial court again denied that motion after the offer.  This Court treats a trial court's findings of fact at a suppression hearing with substantial deference, requiring a preponderance of evidence to overturn those findings; however, this Court applies the law de novo to those facts.  <u>See</u> <u>State v. Crutcher</u>, 989 S.W.2d 295, 299 (Tenn. 1999).

---

[3]  Although the defendant's brief refers to the Tennessee Rules of Civil Procedure, his argument actually invokes the cited Rule of Criminal Procedure.

The offer of proof established that the defense counsel's investigator brought a blank videotape to the police department, seeking a copy of the original tapes of both transactions. However, as noted above, the recording of the second transaction partially erased the recording of the first transaction. The trial court determined that defense counsel knew of the error several days before trial and that the original tapes had been available for inspection. The trial court also determined that neither the state nor the police officers attempted to interfere with any attempt by counsel to review the tape. No evidence indicated that the officer intentionally recorded only part of one of the transactions. Further, counsel admitted that they were aware of the error in the tape several days before trial. Therefore, the trial court denied the defendant's motion to suppress the tapes.

The defendant cites State v. Cadle, 634 S.W.2d 623 (Tenn. Crim. App. 1982), in which a defendant was tried and found guilty of two separate indictments for sale of controlled substances. See id. at 623-24. That defendant filed a pre-trial discovery motion under Rule 16(a)(1)(A) of the Tennessee Rules of Criminal Procedure to seek disclosure of any written or recorded statements made by him to any state representative. The state was unaware of any such statements until the investigating agent recalled, on the night before trial, a tape recorded conversation with the defendant. See id. at 624. He gave the tape to the prosecutor while the jury was being selected, and the state informed the defense counsel of the tape before the selected jury was sworn. See id. The parties then retired and listened to the tape. After hearing it, the defendant claimed that the voice was not his. See id.

"The suitability of an individual alternative will always depend on the nature of the statement and the basis upon which it is being challenged." Id. at 625. In Cadle, contrasted with precedent, the defendant questioned the trustworthiness of the evidence and its authenticity as soon as he learned of the existence of the tape. See id. The Cadle court concluded that the tape recording was crucial evidence against the defendant, especially since the absence of the material witness to the transaction resulted in "basically a swearing contest" between the defendant and the agent. See id.

We distinguish the instant case from the Cadle holding. First, in the instant case the defendant was aware of potential problems with the video copy several days before trial. The instant defendant does not question the authenticity of the actual tape but instead protests that he was not provided a full copy. Although we conclude that this tape was likely significant evidence against him, we are not faced with Cadle's "swearing contest" because the agent, a material witness to the transaction, testified at trial. Also, the defendant does not establish how the abbreviated copy compromised his defense, contrasted with the Cadle defendant's notifying the court that he wished to more closely inspect the tape, secure voice analysis, and call a witness to testify that the recorded voice was not his. Finally, according to the language of the rule, we find no affirmative obligation on the state to copy materials for the defendant. Rather, the state must make the materials available. The record indicates that the state complied with the rules of discovery, and therefore this issue is without merit.

**Sentencing**

The defendant, convicted of one count of sale of 0.5 grams of cocaine, received a 15 year sentence as a Range II offender.  After applying two enhancement factors and no mitigating factors, the trial court imposed three years in excess of the presumptive minimum sentence for the range.  The trial court concluded that confinement was necessary to avoid depreciating the seriousness of the offense and to achieve general deterrence.  Also, less restrictive measures had been unsuccessful in the past, and the trial court therefore concluded that the defendant was not amenable to rehabilitation.  See Tenn. Code Ann. § 40-35-103(1)(C).  That court further concluded that the defendant was a professional criminal and that he had an extensive record of criminal activity.  Therefore, the sentence was imposed consecutive to a prior 7 year sentence for a 1990 burglary conviction.  See Tenn. R. Crim. P. 32(c)(2) (addresses sentences imposed consecutively to prior unserved sentences).  The defendant complains that this sentence should be reduced.

When a defendant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct."  See Tenn. Code Ann. § 40-35-401(d).  This presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  The appellant carries the burden of showing that his sentence is improper.  See Tenn. Code Ann. § 40-35-401 (sentencing comm'n cmts);  State v. Jernigan, 929 S.W.2d 391, 395 (Tenn. Crim. App. 1996).

The defendant was convicted of a Class B felony, which, in the absence of enhancing or mitigating factors, receives a presumption of a minimum sentence in the range.  See Tenn. Code Ann. § 40-35-210(c).  The defendant was sentenced as a Range II offender, and the appropriate sentence range for that classification is not less than 12 years but not more than 20 years.  See Tenn. Code Ann. §§ 39-17-417, 40-35-112(a)(2).

The trial court found the enhancement factors of prior criminal history and previous history of unwillingness to comply with the conditions of release in the community, see Tenn. Code Ann. § 40-35-114(1), (8), and found no mitigating factors. The defendant's criminal history includes prior convictions for:
    (1)  burglary and theft of property worth between $1000 and $10,000 on October 30, 1998;
    (2)  misdemeanor reckless endangerment on July 17, 1998;
    (3)  forgery and evading arrest on March 30, 1993;
    (4)  aggravated burglary and theft of property worth more than $1000 but less than $10,000 on July 17, 1990;
    (5)  first degree burglary, theft of property worth more than $500 but less than $1000, forgery, and passing forged checks on May 16, 1990;
    (6)  damage to private property, October 22, 1984;
    (7)  grand larceny and third degree burglary on September 25, 1984;

(8) assault on April 21, 1984;

(9) DUI, carrying a weapon, and possession of marijuana on April 5, 1984;

(10) malicious mischief on April 2, 1984;

(11) public intoxication on May 4, 1983;

(12) leaving the scene of an accident on August 20, 1982;

(13) breach of the peace and shoplifting on March 30, 1981; and

(14) two counts of attempt to commit a felony on November 9, 1978.

## Enhancement of sentence

We concur with the trial court's assessment of the defendant's criminal record as extensive. See Tenn. Code Ann. § 40-35-114(1). Further, the Department of Probation Officer testified that the defendant had parole revoked on prior occasions, indicative of "unwillingness to comply with the conditions of a sentence involving release into the community." See Tenn. Code Ann. § 40-35-114(8). We find no error in the trial court's enhancing the minimum sentence by three years.

## Necessity for incarceration

We cannot agree with the trial court's conclusion that confinement is necessary to avoid depreciating the seriousness of the offense. Although a serious crime, this drug transaction was not "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." See State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995).

However, the state presented evidence regarding deterrence, in that one officer annually investigated between one hundred and two hundred crack cocaine cases in Dyersburg, Tennessee. Further, Officer Porter estimated that 85% to 90% of all the crimes he investigated were somehow related to crack cocaine abuse. Finally, Porter testified that he had seen imposed sentences serve as a deterrent to the specific offenders and to others inclined to participate in crack cocaine trade. Such deterrence is a valid basis for confinement in lieu of alternative sentencing. See Tenn. Code Ann. § 40-35-103(1)(b); Bingham, 910 S.W.2d at 455.

Further, we agree with the trial court's conclusion that confinement was appropriate because measures less restrictive than confinement had recently been applied unsuccessfully to that defendant and confinement is necessary to protect society by restraining a defendant with a long history of criminal conduct. See Tenn. Code Ann. § 40-35-103(1)(A), (C).

## Consecutive sentencing

We again note that the defendant has an extensive record of criminal activity. See Tenn. Code Ann. § 40-35-115(b)(2), (6). This factor is sufficient basis for consecutive sentencing. See

State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997).  Further, the trial court, noting that the record was devoid of any indication that the defendant had held employment and that he had apparently never held a job, concluded that the defendant had knowingly devoted himself as a professional criminal to illegal acts as a major source of livelihood.  See Tenn. Code Ann. § 40-35-115,(b)(1).  We find no error in the consecutive sentences.

## CONCLUSION

We affirm the judgment and sentence from the trial court.