IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
MAY 2000 SESSION

## STATE OF TENNESSEE v. LARRY E. SCALES

**Direct Appeal from the Circuit Court for Warren County**
**No. F-7555 Charles D. Haston, Judge**

---

**No. M1998-00142-CCA-R3-CD - Filed September 15, 2000**

---

The defendant, Larry E. Scales, appeals his conviction of theft over $500 and his six-year sentence as a career offender. Because the trial court erroneously instructed the jury on the possible range of punishment, the judgment is reversed and the defendant is granted a new trial.

**Tenn. R. App. P. 3; Judgment of the Trial Court Reversed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. JOE G. RILEY, J., filed a dissenting opinion.

Matt Q. Bastian, Columbia, Tennessee, for the appellant, Larry E. Scales.

Paul G. Summers, Attorney General & Reporter, Lucian D. Geise, Assistant Attorney General, and Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Larry E. Scales, was convicted of theft of merchandise over $500, a Class E felony. The trial court imposed a Range III sentence of six years. In addition to his challenge to the sufficiency of the evidence, the defendant presents the following issues for appellate review:

> (1) whether the trial court erred by failing to suppress evidence found in the defendant's automobile;
>
> (2) whether the trial court erred by admitting into evidence photographs of the property allegedly taken from the victim and of the victim's premises when the victim, after a defense motion for discovery, either lost, destroyed, or disposed of physical evidence;
>
> (3) whether the trial court erred by denying the defendant's motion to compel production of evidence;

(4)      whether the trial court erred by admitting testimony regarding information contained in a computerized inventory of the victim's store;

(5)      whether the trial court erred by refusing a specially requested jury charge regarding lost or destroyed physical evidence;

(6)      whether the trial court erred in its instructions on possible range of punishment; and

(7)      whether the trial court properly applied mitigating and enhancement factors in the imposition of sentence.

Because there was error in the jury instructions, the judgment is reversed and the defendant is granted a new trial.

On October 17, 1997, McMinnville K-Mart employee Connie Templeton observed the defendant in an area of the store where shoplifting was common. At approximately 6:15 P.M., Gordon Greene,[1] a K-Mart area loss control manager, observed the defendant pushing a cart which contained garbage bags and three video cassette recorders ("VCRs") covered by several large air conditioner filters. He saw the defendant proceed into the store's lawn and garden department, a fenced-in annex to the main building. The area was described as "dark" and practically "closed for business" at that time of the year. There were no K-Mart employees assigned to the department. The area was unlocked only because the doors served as an emergency exit.

Greene, who had become suspicious, directed Ms. Templeton to call for help and then walked to the doorway of the lawn and garden department, where he saw the defendant attempt to slide one of the VCRs through an open area between the fence and an adjacent cinder block wall.[2] At that point, Greene identified himself, placed the VCR back into the shopping cart, and escorted the defendant back into the main store area. When the defendant was escorted into the security office, he claimed that his name was "Larry Johnson." He had no identification papers in his possession. When Greene called the police, the defendant tried to escape. Greene and several customers stopped the defendant and placed him in handcuffs. Warren County Sheriff's Department Deputy Tim Page, who was dispatched to the scene, arrested the defendant. Once the defendant was escorted to the patrol car, Greene found a set of car keys in the defendant's pocket. He found a white Cadillac with Davidson County license plates that the keys fit. After receiving the defendant's permission to search the car, Greene found two wind suits and one jogging suit wrapped in a garbage bag in the trunk.

---

[1]This witness's name appears in the record as both "Greene" and Green."

[2]There was a discrepancy between the arrest warrant which alleged that the defendant had pushed the VCR "under the lawn and garden gate" and Greene's trial testimony. After acknowledging that it would be impossible to force the VCR under the gate, Greene said that the defendant pushed the VCR between the gate and the fence.

There were K-Mart price tags on each item, but no receipts or K-Mart store bags.

Included in either the shopping cart or the trunk of the defendant's car were three Westinghouse VCRs valued at $169.99 each, a boy's jogging suit valued at $11.99, two boys' wind suits, each valued at $16.99, a box of Hefty trash bags valued at $2.79, and two air conditioner filters valued at 99 cents and 59 cents, respectively. The aggregate value of the items was $560.31.

The defendant did not testify. Kelsey Carline Winchester, who resides in McMinnville, testified that she knew the defendant, who lived in a different county, and had some of his property stored at her residence. When the defendant asked that she mail the items, she wrote back explaining that she could not afford the postage. Her testimony was for the purpose of establishing that the defendant had a legitimate reason to be in McMinnville. Earl Pendergraph, a private investigator for the defense, testified that K-Mart had a number of security cameras in the store. He provided several photographs of the cameras from which it might be inferred that had the theft occurred, K-Mart would have had a video tape of the incident. No video tape was produced either in discovery or at the trial.

The defendant has challenged the sufficiency of the convicting evidence. Several well-established principles apply. On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after a review in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405 (Tenn. 1983). This court may neither reweigh nor reevaluate the evidence. Nor may this court substitute its inferences for those drawn by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856 (1956).

Tenn. Code Ann. §§ 39-14-103, -105(2), and -146 provide that a defendant is guilty of theft of merchandise over $500 when the state proves that the defendant, with intent to deprive a merchant of merchandise with a value over $500 but less than $1,000, knowingly concealed the merchandise or removed, took possession of, or caused the removal of the merchandise.

Here, the state proved that the defendant concealed three VCRs and a box of garbage bags under two large air conditioner filters and then proceeded into an unlit, unoccupied area of a fenced-in lawn and garden department outside of the main building. The area loss control manager observed the defendant push one of the VCRs between the chain-link fence and an adjacent cinder block wall in the direction of the open parking lot. When confronted, the defendant gave a false identification. When the loss control manager called the police, the defendant attempted to flee. A search of the defendant's vehicle yielded three additional items, all of which bore K-Mart price tags and for which there was no receipt or K-Mart shopping bag. The total value of the items taken was $560.31. In our view, the jury acted within its prerogative in determining that the defendant was guilty of the theft.

I

The defendant argues that the trial court erred by failing to suppress the evidence found in his automobile. He submits that proof that he consented to the search "does not seem credible."

Our scope of review is limited. The findings of fact made by the trial court in a suppression hearing are conclusive on appeal unless the evidence preponderates otherwise. State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). After hearing the testimony of Gordon Greene, who was the K-Mart area loss control manager, and Deputy Tim Page, the trial court determined that the search was consensual. The trial court accredited the testimony of Greene who, upon finding car keys in the defendant's pocket said, "I thought you told me you didn't drive. . . . Do you mind if I look in your car[?]" The defendant responded, "No, go ahead." In our view, the evidence supports the trial court's conclusion that the defendant consented to the search of this vehicle.

The defendant also alleges that Greene was acting on behalf of the state at the time he made the request. In State v. Burroughs, our supreme court, citing United States v. Walther, 652 F. 2d 789 (9th Cir. 1981), recognized two factors in determining when private conduct is chargeable to the state in relation to the protection against unreasonable state-conducted searches and seizures. The factors in determining whether an individual is a state agent are as follows:

> (1)    whether the government has knowledge of and acquiesces in the search; and
>
> (2)    the intent of the party performing the search.

926 S.W.2d 243, 246 (Tenn. 1996). Describing the factors as the "legitimate independent motivation" test, our supreme court in Burroughs determined that a private individual who had conducted a warrantless search of a dormitory room was not a state agent. Several federal cases cited with approval in Burroughs held that so long as the private party acts for a reason independent of the purpose of the state, there is no state agency and, in consequence, no protection against unreasonable searches and seizures. Here, the trial court held that Greene was not a state actor.

In our assessment, the loss control manager was independently motivated to guard against shoplifting and to retrieve any articles stolen from his employer. Because Greene, as a part of his duties of employment, was independently motivated to retake possession of any items stolen by the defendant, he did not, in our view, qualify as an agent for the state.

II

Next, the defendant argues that the trial court erred by allowing the state to present evidence which should have been subject to discovery. In particular, the defendant objects to the introduction of photographs of the stolen property when some of the stolen merchandise, had it been available,

might have been inherently exculpatory; he also argues that the state should not have been allowed to present a loss control information report as proof of value of the merchandise because the evidence was not produced in advance of trial in response to a discovery request; and, lastly, he maintains that the trial court erred by allowing a photograph of the loss control manager indicating that a VCR could be passed between the lawn center fence and the adjacent wall.

Rule 16 of the Tennessee Rules of Criminal Procedure provides in pertinent part as follows:

> Documents and Tangible Objects. Upon request of the defendant, the State shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the State, and which are material to the preparation of the defendant's defense or are intended for use by the State as evidence in chief at the trial, or were obtained from or belong to the defendant.

Tenn. R. Crim. P. 16(a)(1)(C).

The defendant requested all material defined as discoverable in Tenn. R. Crim. P. 16(a)(1)(C). The state responded as follows:

> 4.  **DOCUMENTS AND TANGIBLE OBJECTS:**
>     List of items taken and their value–Attached.
>     Photographs of items that were taken, clothing items
>     on above list, air filters

Tennessee Rule of Criminal Procedure 16(a)(1)(D) provides as follows:

> Reports of Examinations and Tests. Upon request of a defendant the State shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the State, . . . .

Again, the defendant requested the material defined in Tenn. R. Crim. P. 16(a)(1)(D). In response, the state reported the following:

> 5.  **REPORTS OF EXAMINATIONS AND TESTS:**
>     None known.

The defendant asserts that "K-Mart lost or destroyed all physical evidence." The defendant submits that he was denied the opportunity to present potential exculpatory evidence by his inability

to inspect the packaging of the VCR that Gordon Greene claimed to have caught him passing between the fence and the cinder block wall. His rationale is that if the box had been made available and did not bear marks, scrapes, or scratches, the evidence would have been exculpatory.

Assuming that the state failed to meet its discovery obligations, the question is what remedy to afford the defendant. Certainly, the VCR boxes should have been made available for inspection by the defendant. According to Gordon Greene, however, K-Mart placed the VCRs back on the sales floor prior to trial. Photographs alone, even though of the actual items taken, did not qualify as adequate compliance with the discovery rule. Any sanctions are to be determined on a case-by-case basis, depending upon the circumstances. State v. Cadle, 634 S.W.2d 623, 625 (Tenn. Crim. App. 1982). In State v. Garland, 617 S.W.2d 176, 185 (Tenn. Crim. App. 1981) (citations omitted), this court ruled that evidence offered in violation of a discovery rule "should not be excluded except when it is shown that a party is actually prejudiced by the failure to comply with the discovery order and that the prejudice cannot be otherwise eradicated. The exclusionary rule should not be invoked merely to punish either the State or the defendant for the deliberate conduct of counsel in failing to comply with a discovery order." A continuance is often an appropriate remedy. State v. Cottrell, 868 S.W.2d 673, 677 (Tenn. Crim. App. 1992). Because the VCR boxes had presumably been sold, a continuance would have been of little benefit in this case.

In our view, the exclusion of the photographs of the items taken would be, under these circumstances, too heavy a penalty to the state. The fault, if any, was not of the state but of the victim. Moreover, the lack of marks or scratches on the boxes may not have been so favorable to the defense. There was no evidence that pushing the VCR between the fence and the wall would have necessarily resulted in a scratch or tear of the container. The jury would have been at liberty to make any one of several inferences, some of which might not have been favorable to the defense. More importantly, the defense was free to thoroughly cross-examine Greene, the loss control manager, as to the condition and whereabouts of the missing container. For these reasons, we conclude that the trial court did not err by admitting the photographs.

During the course of the trial, the state offered a copy of a K-Mart Loss Control Information Report that had been prepared by Greene and that listed the items that were taken by the defendant and their values. When asked whether the defense objected to the admission of the item, the answer given was, "Not on the admissibility of it, Judge." At the time the proof was entered, there was no objection; therefore, any issue about the admissibility of the Loss Control Information Report has been waived. See Tenn. R. App. P. 36(a). Even if there had been an objection, however, the error would not have warranted a reversal. The Loss Control Information Report, as we interpret the record, contained no more information than was already available to the defendant through his own investigation.

The defendant also argues that the trial court committed error by allowing the state to admit the photograph of Greene placing a VCR between the garden center gate and wall as a means of establishing that it was physically possible to do so. The state did not provide notice of the photograph until five days prior to the trial.

The record establishes that the photograph had not been made until sometime after the date of the pretrial suppression hearing. Had the photograph been taken earlier, the state would have had the obligation to provide it to the defendant as soon as reasonably practicable. In our view, five days' notice was enough under these circumstances. Certainly, the defendant has not shown any prejudice. He did not ask for a continuance of the trial to further assess the authenticity or the content of the photograph.

III

Next, the defendant complains that the trial court erroneously denied his motion to compel the production of any photographs, video tapes, or audio tapes made by the store security equipment on the date of the crime. The defendant maintains that had a video tape from the security camera been available, it would have established his innocence. The defendant claims that there were a number of security cameras throughout the store and that Greene's explanation, that K-Mart had only one operable video camera (which did not view the area of the theft on the night in question) and that the others (inoperable) were mounted for deterrence purposes only, was "outlandish."

The trial court accredited the following testimony:

> Q. Is Mr. Scales or any events related to Mr. Scales' arrest depicted on any security tapes in K-Mart's possession at this time?
>
> A. No, sir.
>
> Q. Or were there ever such tapes?
>
> A. No, sir.

The trial court observed, "The video doesn't exist . . . so, how I am going to require they give them (sic) to you?"

The defendant has been unable to substantiate his charge that there were video tapes of the crime scene area on the night at issue. Because the trial court accredited the state's assertion that there were no such tapes, there was no error in the failure to compel their production.

IV

Next, the defendant asserts that the trial court allowed inadmissible hearsay evidence when the loss control manager testified that he established that K-Mart was missing three items identical to those found in the defendant's trunk by comparing the number of such items reported by K-Mart's computerized inventory system with the number of such items on the sales floor. The defendant also argues that the testimony regarding the computerized inventory system amounted to scientific

testimony and that Greene was not properly qualified as an expert.

Generally, hearsay evidence is inadmissible. Tenn. R. Evid. 802. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c).

In our view, Greene's testimony regarding the K-Mart computerized inventory system was not hearsay. According to Greene, he entered identifying numbers for the two types of items found in the defendant's car into the K-Mart inventory computer. In return, the computer supplied him with the numbers of those two types of items that should have been present on the sales floor. He then counted the numbers of those items on the sales floor and determined that two of one type (boys' wind suits) and one of the other type (boys' jogging suits), exactly what was found in the defendant's trunk, were missing. At no point did Greene offer any testimony regarding any specific information gleaned by him from the K-Mart inventory system. As such, his testimony related only to his own investigative efforts and did not implicate the hearsay rule.

Likewise, we find no merit in the defendant's argument that Greene's testimony regarding K-Mart's computerized inventory system constituted inappropriate expert testimony. Greene was not offered as an expert and did not, in our opinion, need to be so qualified in order to offer testimony regarding his use of K-Mart's computerized inventory system. The inventory system described by Greene does nothing more than track and report the number of any given item that the store should have on hand. Such a system does not require "scientific, technical, or other specialized knowledge" to understand. See Tenn. R. Evid. 702. Nor did Greene attempt to offer any "scientific, technical, or other specialized knowledge" in the form of an opinion or otherwise. Accordingly, Greene did not need to be qualified as an expert in order to testify to his use of the K-Mart computerized inventory system. Moreover, the trial court specifically authorized the defense to develop any fallibilities within the system on cross-examination.

In our view, there was no error. Moreover, had the admission of the evidence been error, the error would have been harmless. The defendant had in the trunk of his vehicle three items bearing K-Mart tags. There were no receipts; there was no K-Mart bag. Unexplained possession of the property strongly implies a theft. In the context of all of the evidence offered at trial, it is our view that any error would have been harmless. See Tenn. R. App. P. Rule 36(b).

The defendant asked the trial court to instruct the jury on the missing witness rule. The request was based upon the evidence "lost or destroyed by K-Mart." The defendant argued that the loss or destruction of the evidence should create an inference that, if presented at trial, the evidence would be damaging to the interest of the party in exclusive control thereof. Because the VCR box or boxes, or perhaps the security video tapes, were missing evidence, the defendant suggests that he is entitled to a new trial because the trial court refused an instruction.

The missing witness rule applies when the evidence shows as follows:

(1)     that the witness had knowledge of material facts;

(2)     that a relationship exists between the witness and the party that would naturally incline the witness to favor the party; and

(3)     that the missing witness was available to the process of the court for trial.

Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979).

In our view, the trial court properly rejected the request by the defendant. It is not error to refuse to give an inaccurate special request. State v. Bush, 942 S.W.2d 489, 523 (Tenn. 1997). This court knows of no basis to expand the missing witness rule to encompass possible missing evidence. It would be speculative to assume that any of these items were material. While the VCR boxes or the video tapes, if they existed, may have been "naturally" favorable to the state, the preponderance of the evidence established that the items were not available to court process.

V

Next, the defendant claims that the trial court erred in its instructions to the jury as to the range of punishment. The defendant requested a charge of range of punishment but objected to any reference to the fact that he qualified as a Range II, repeat offender. The pertinent part of the charge to the jury was as follows:

> If you find this defendant guilty of theft of merchandise, and you assess the value at less than five hundred dollars ($500.00), the maximum sentence I can give him is not in excess of eleven (11) months and twenty-nine (29) days, because it is a misdemeanor. The minimum number of years, in the event you find this defendant guilty of theft of merchandise in excess of five hundred dollars ($500.00), the range of punishment is not less than two (2) nor more than six (6) years. This person would be sentenced to serve thirty-five percent (35%) of any sentence imposed by the court as a Range II offender as prescribed by the Department of Corrections. Whether the defendant is actually released from incarceration on the date when he first becomes eligible for release is a discretionary decision made by the Board of Parole and is based on many factors. The Board of Parole has the authority to require a defendant to serve the entire sentence imposed by The Court.

(Emphasis added). After the charge, the defendant contended that the reference to Range II was "basically the same as telling [the jury] he has a prior record."

-9-

Tennessee Code Annotated Section 40-35-201(b), as it was in effect at the time of trial, provided that upon written motion by either party, the "court shall charge the possible penalties for the offense charged," including such factors as the "minimum number of years a person sentenced . . . must serve before reaching [his] earliest release eligibility date." Tenn. Code Ann. §§ 40-35-201(b)(1), (b)(2)(A)(i). The state submits that reference to the defendant's status as a Range II offender did not indicate to the jury that the defendant had a prior record.

In State v. King, 973 S.W.2d 586 (Tenn. 1998), the provision allowing jury instructions which included an explanation of early release and parole eligibility was found not to be in violation of either the separation of power or the due process clauses of our state constitution.
In that case, the supreme court approved a jury instruction that the sentence for an aggravated burglary, a Class C felony, could range from as little as three years (the minimum for Range I) to as much as fifteen years (the maximum for Range III). See Tenn. Code Ann. § 40-35-112. That is the proper instruction under circumstances such as these.

Initially, the trial court here should have charged the minimum sentence as one year, not two. Secondly, there should have been no reference to a specific range, Range II in this instance, that would imply a prior record and the possibility of an enhanced punishment. Each instruction was erroneous. A Range I sentence for a Class E felony is no less than one year (although a lesser jail sentence is permissible) and no more than two. Tenn. Code Ann. § 40-35-112(a)(5). A multiple offender who qualifies by having between two and four prior felony convictions within the conviction class, a higher class, or the next two lower classes of the offense at issue is a Range II offender with a possible sentence on a Class E felony of between two and four years and a release eligibility of 35%. See Tenn. Code Ann. §§ 40-35-106(a)(1), -112(b)(5), -501(d). A persistent Class E felony offender, a classification falling between the multiple and career offender classification, is a Range III offender with a possible sentence of between four and six years and a 45% release eligibility. Tenn. Code Ann. § 40-35-107. A career Class E felony offender, who may qualify any of several ways, including by having six prior felony convictions when the offense at issue is a Class E felony, is a Range III offender, with a sentence of six years and a release eligibility of 60%. Tenn. Code Ann. §§ 40-35-108, -112, -501(f).

At the conclusion of the charge, the Assistant District Attorney expressed concern that the trial court provided a Range II instruction with a 35% release eligibility date when the state had given notice that "[the defendant] could be a [Range III] career offender," even though the defendant had "not acknowledge[d] that he was . . . the named defendant in all of these [prior] charges." A career offender, of course, is entitled to no less than a 60% release eligibility. Another possible concern was whether any of the defendant's prior offenses had been committed "within twenty-four (24) hours of each other," which might have had an effect on the ultimate classification. Because some of the convictions were out-of-county and had not been received at the time of trial, the state could not ascertain the appropriate range. The defendant, who did not contest the jury charge of a possible two- to six-year sentence, contended that his request for instructions pertained only to "how many years [he] face[d] if . . . convicted." While these conversations took place after the instructions and before the return of the verdict, the trial court took no remedial action. Later, at the sentencing

hearing, the trial court determined that the defendant qualified as a career offender and imposed the maximum possible sentence with the 60% release eligibility.

In State v. Cook, 816 S.W.2d 322 (Tenn. 1991), our supreme court considered whether the trial court committed prejudicial error by charging possible punishment for a Range I offender when the defendant was actually a Range II offender. Unlike in this case, the trial court in Cook charged a range of sentence which had an incorrect maximum, far less than that required by statute. Upon concluding that a criminal defendant has a statutory right to an accurate instruction on the possible range of possible punishments, the court concluded that the error resulted in "prejudice to the judicial process" and merited a remand for a new trial. Id. at 327. In doing so, the court reasoned that any rights or benefits conferred by the statute "would be lost if the defendant were to be sentenced to punishments greater than what the jury finding guilt was instructed would be imposed." Id.; see also State v. Thornton, 10 S.W.3d 229 (Tenn. Crim. App. 1999).

Because the same rationale would apply here, the ruling in Cook controls. The trial court instructed the jury that the sentence could be served at Range II, 35% or, assuming the maximum possible term, within 25.2 months. A career offender, however, requires a six-year sentence; the earliest release is 43.2 months. There is no discernible distinction between an erroneous instruction for a lesser term of years and an erroneous instruction for a lesser eligibility date. Because, in the words of our supreme court, the error relates to the "judicial process," a reversal and a new trial is warranted.[3]

VI

As his final issue, the defendant complains that the trial court failed to make proper findings and failed to properly apply mitigating and enhancement factors as prescribed by statute. The defendant specifically complains about the trial court's reliance upon references in the presentence report to prior convictions unaccompanied by certified copies of the judgments. Because there was no objection at the sentencing hearing, the defendant relies upon the plain error doctrine. In support of his contention, the defendant cites State v. Jones, in which this court stated, in pertinent part, as follows:

> It is incumbent upon the state to provide evidence of sufficient quality to allow the trial court to find beyond a reasonable doubt that separate convictions, as limited by the enhanced sentencing statute, exist. Ordinarily, this should mean that the state should show sufficient circumstances surrounding offenses resulting in multiple convictions in the same proceeding so as to justify each conviction being treated separately.

---

[3]In Cook, the state filed a petition to rehear, abandoning "its goal [of] seeking Range II punishment" rather than Range I, as originally directed by the trial court. Our supreme court then set aside its remand for a new trial and reinstated a Range I sentence. 816 S.W.2d at 322.

901 S.W.2d 393, 397 (Tenn. Crim. App. 1995)(quoting State v. Dale E. Phillips, No. 01C01-9303-CC-00106, slip op. at 10 (Tenn. Crim. App., at Nashville, Dec. 30, 1993)).

Computer printouts from the NCIC are not admissible as a substitute for certified copies of court convictions or for any other purpose. State v. Buck, 670 S.W.2d 600, 607 (Tenn. 1984). The sentencing act, however, permits the introduction of "reliable hearsay." Tenn. Code Ann. § 40-35-209(b). To qualify as reliable, the evidence must be presented in such a manner as to give the opposing party a reasonable opportunity to rebut it. State v. Taylor, 744 S.W.2d 919, 921 (Tenn. Crim. App. 1987).

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987). The record in this case demonstrates that the trial court made adequate findings of fact.

Although classified as a Range II offender for purposes of the jury instructions, the defendant was sentenced as a Range III, career offender. See Tenn. Code Ann. § 40-35-108(c). When a defendant is sentenced for a Class D or E felony, he qualifies as a career offender if his prior record includes at least six prior felony convictions in any classification. Tenn. Code Ann. § 40-35-108(a)(3). The defendant's objection to being so classified is based upon inadequacies within the supporting documents; however, original or certified copies of court records of prior felony convictions bearing the same name as the defendant are "prima facie evidence that the defendant named therein is the same as the defendant before the court, and [are] prima facie evidence of the facts set out therein." Tenn. Code Ann. § 40-35-202(a). That the defendant did not object to the lack of certification of the judgments is a waiver. The failure at trial to take action reasonably necessary to prevent or nullify the error precludes appellate relief. Tenn. R. App. P. 36(a). Had there been serious concerns about the accuracy of the prior convictions or the identity of the defendant, the state could have been granted time to verify the documentation or gain other assurances of authenticity.

While Sharon Scott, who prepared the presentence report, testified that the defendant had

-12-

more than 20 prior convictions, including felonies and misdemeanors, the state was required to prove only six in order to establish the defendant as a career offender. Certified copies of judgments and court minutes establish the following prior felony convictions:

| Date | Offense | Court Number |
|------|---------|--------------|
| 5-8-75 | Concealing Stolen Property under $100 | Davidson Criminal B-4146 |
| 2-15-77 | Attempt to Commit a Felony and Assault with Intent to Commit Second Degree Murder | Davidson Criminal B-9284 and B-9283 |
| 6-20-79 | Fraudulent Use of an Automobile | Davidson Criminal C-3928 |
| 7-26-88 | Possession of Burglary Tools | Davidson Criminal 88-W-636 |
| 10-22-93 | Theft of Property | Montgomery Circuit 32560 |
| 4-3-95 | Theft over $1,000 and Escape | Warren Circuit F-6791 |

Based upon the certified copies of the court minutes and judgments and the testimony offered by Ms. Scott, the trial court had a basis upon which to determine that the defendant had at least six prior felony convictions. See State v. Anthony D. Hines, No. 01C01-9406-CC-00189 (Tenn. Crim. App., at Nashville, May 25, 1995). In our view, the defendant was properly classified a Range III, career offender and is not be entitled to relief on this ground.

The judgment is reversed, however, due to the inaccurate range of punishment. The defendant is granted a new trial.

_____
GARY R. WADE, PRESIDING JUDGE