**STATE of Tennessee, Appellee,**

v.

**Thomas A. STREET, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Oct. 10, 1988.

Permission to Appeal Denied by Supreme Court Dec. 12, 1988.

 

 
 
 
 

 
 
 
 

 
 
 

 
 
 

 
 
 

 
 
 
 

 
 
 
 

 
 

Jimmie D. Turner, Oak Ridge, and Bruce D. Fox, Clinton, for appellee.

W.J. Michael Cody, Atty. Gen. and Reporter, Gordon W. Smith, Asst. Atty. Gen., Nashville, Charles E. Hawk, Dist. Atty. Gen., Frank Harvey and Roger Delp, Asst. Dist. Atty. Gen., Kingston, for State of Tenn.

---

**OPINION**

WADE, Judge.

The defendant, Thomas A. Street, was found guilty of first-degree murder and sentenced to life imprisonment.

In this appeal of right, the defendant challenges the sufficiency of the evidence and presents the following additional issues:

(1) whether he was denied the effective assistance of counsel;

(2) whether he was improperly denied discovery;

(3) whether the court erred in allowing the state to make a contingency plea offer;

(4) whether the conduct of correctional officers improperly prejudiced the jury;

(5) whether the trial court erred in admitting certain evidence;

(6) whether the trial court erred in excluding certain evidence;

(7) whether the trial court erred in not dismissing the indictment based upon improper form;

(8) whether the death penalty statute is unconstitutional; and

(9) whether certain prospective jurors were improperly excused for cause.

The court finds no prejudicial error and affirms the judgment of the trial court.

The defendant was jointly indicted and tried with Charles A. Freeman and Nicholas Todd Sutton for the murder of Carl Estep.[1] All four were inmates at the Morgan County Regional Correctional Facility at the time of the offense.

Gladys Noe Christmas, a correctional officer at the prison, testified that shortly after 10:00 A.M., January 15, 1985, she and other officers discovered the victim's body in the bunk of his cell in Guild 5. There were obvious stab wounds and blood was on the walls and bed covers. She stated that inmates were generally free to come and go from the guilds to the outside and that most were either at the commissary or in the yard at the time of the stabbing.

---

1. Freeman was acquitted; Sutton was convicted and sentenced to death.

Harold Meadows, an inmate in Guild 5 stated that there was "bad blood" between Estep and the defendant. Meadows related that for a period of approximately 5 to 10 minutes between 9:30 A.M. and 10:30 A.M. there were no guards in Guild 5. During this interval, he saw the defendants Street and Sutton go to Estep's room. After they entered his cell, the cell's radio got louder. Meadows heard a muffled scream before Sutton and Street came out. He said that Sutton and the defendant wore denim clothes, boots and sneakers.

Meadows recalled that two days prior to the murder, he saw a "physical discussion" between Estep and the defendants during which Sutton held a knife to the victim's throat. Afterwards, the victim tried to find a "sticker" (prison knife).

Meadows was moved to minimum security after providing this information to prison officials and, a short time later, paroled.

While Street was in investigative lockup after the killing, he told another inmate, Ralph Edward Scates, that, with the help of two others, he cut the victim's throat with homemade knives. Street admitted that he stabbed the victim several times in the heart to make sure he was dead. Afterwards, he attempted to flush his knife down the commode; the two other knives were left in the cell after their prints were removed. Street said that he and his companions took their clothes off and put them in a garbage can.

On cross-examination, Scates, who was eventually moved to a work release center, was impeached with a previous statement to officers to the effect that he did not know what Street had done with the clothes worn during the murder.

Estel Green, another inmate, testified that he saw Sutton and another inmate go inside the victim's cell; heard noises; and, with other inmates, went to the back of the guild where he heard Estep yell, "Don't do that; please don't do that"; then, "Somebody help me; somebody please help me." After the murder, Green was transferred to a community service center and later paroled.

Inmate Cary Scoggins observed Street, Sutton and Freeman go into the victim's room. He said that Sutton stabbed Estep several times as the victim struggled in his bed. The three assailants, he said, washed their hands in the sink and took off their toboggans, sunglasses, and shirts.

Scoggins said that Estep had previously threatened to kill Sutton and he thought the defendants went into Estep's room to "work out their problem" and "call it quits."

James R. Worthington, administrative assistant to the warden, testified that he arrived at Guild 5 at 10:13 A.M. After notifying the warden, he returned to initiate an investigation of the incident. He took photographs of the scene, the victim's wounds, and the two homemade knives found at the scene. A third, clean knife was found by the victim's bed.

A criminologist report indicated that no fibers, hair samples or fingerprints on any of the exhibits matched samples taken from defendant Street. A hair on the clothing found in the garbage bag could have, he concluded, come from the victim.

A TBI forensic serologist, who examined the contents of two garbage bags found in front of Guild B, identified stains matching the victim's blood type on a jacket found in the bags. The human blood stains on two other jackets located in the bags could not be identified. The knife found at the scene matched the victim's blood type.

Dr. William E. Elliott, a forensic pathologist, performed the autopsy. There were thirty-eight stab wounds on the victim's head, neck, chest, arms and hands and bruises several days old on the chin and chest. Two wounds penetrated the victim's heart and seven penetrated the lungs. Seven of the victim's wounds were characterized as "defensive" wounds incurred in an attempt to fend off an attacker. Nine of the thirty-eight cuts could have been fatal and two in particular were determined to be the cause of death. Dr. Elliott believed that two, different-sized weapons were used in the attack.

The defendant Freeman called inmate Gary Lumbert, cellmate of Cary Scoggins

in January of 1985. Scoggins, he said, was with him in the prison library from 8:30 to 10:30 A.M. on the morning of the victim's death. Lumbert said that Scoggins had implied in a conversation that his testimony was motivated by the possibility of favorable treatment.

Jeff Love, a correctional officer, testified that the defendant Street was in Guild 6 during the inspection conducted at 10:05 A.M. on January 15. Love spoke to Street but saw no unusual behavior and no blood on his clothing.

The defendant contests the sufficiency of this evidence to support his conviction of first degree murder.

In its determination of this issue, this court must view the facts in the light most favorable to the prosecution. After the jury resolves the factual dispute, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Patton*, 593 S.W.2d 913 (Tenn. 1979); *State v. Cabbage*, 571 S.W.2d 832 (Tenn.1978). A verdict against the defendant removes the presumption of innocence and raises a presumption of guilt. *Williams v. State*, 552 S.W.2d 772, 776 (Tenn.Crim.App.1977).

There is factual basis in this record to support the conclusion of the jury that the defendant was guilty of each and every element of the offense charged. There is evidence upon which a rational trier of fact might reasonably conclude the defendant's guilt of first degree murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1971); Tenn.R.App.P. 13(e).

## I

The defendant claims that he was denied the effective assistance of counsel by the trial court's refusal to dismiss one of his two attorneys; the denial of his counsel's motion to withdraw; the denial of his motion to sever; his lack of counsel during arraignment; and the failure of his counsel to call witnesses on his behalf.

Prior to trial, the defendant filed a *pro se* motion to dismiss Jimmie D. Turner, one of his two appointed counsel. See Rule 13, Rules of the Supreme Court. The trial court made inquiry as to the degree of his counsel's preparation, his experience as a trial attorney, and the amount of consultation with the defendant. The trial court concluded that Turner was able to provide competent assistance during the course of the proceeding.

On appeal, the trial court's findings are conclusive unless the evidence preponderates against them. *Graves v. State*, 512 S.W.2d 603 (Tenn.Crim.App.1973). The evidence supports the trial court's denial of the defendant's motion to dismiss. The defendant presents no persuasive ground for his counsel's removal.

Turner filed a motion to withdraw after he associated one of the co-defendant's attorneys into his law practice. This association, contends the defendant, created a conflict of interest requiring withdrawal.

Prior to trial, the state offered to *nolle prosequi* the charges against the defendant contingent upon his co-defendants entering into a plea bargain agreement. The state's proposals were rejected by the other defendants. The defendant suggests that the newly created conflict constituted in and of itself a deficiency in performance.

In order to demonstrate a violation of the defendant's right to conflict-free counsel, the defendant must show that there was an actual conflict of interest that adversely affected the lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

The factual scenario in this instance presents a probable conflict of interest; this is particularly apparent when the defendants were offered a plea bargain contingent upon the acceptance by the other defendants. *See Walker v. Garrington*, 521 F.Supp. 1313 (M.D.Tenn.1981).

For whatever reason, the bargain was not made. Nothing in this record indicates, however, nor is it seriously alleged, that the conflict of interest adversely affected his attorney's performance at trial.

The defendant was also represented by conflict-free counsel during the proceeding. Supreme Court Rule 13, providing for the appointment of two attorneys, is permissive, not mandatory. The defendant does not suggest his untainted attorney provided a deficient performance. Any error created by the conflict was, therefore, harmless beyond reasonable doubt. Rule 36(b), Tenn.R.App.P.; Rule 52(a), Tenn.R.Crim.P.

The defendant also contends that the trial court's denial of the motion to sever subjected him to ineffective assistance of counsel; he argues that he was prejudiced by the joint trial because of his attorney's association with a co-defendant's attorney and the contingency plea offers.

■■■ The defendant neither cites legal authority to support his argument nor makes appropriate references to the record. This court knows of no precedent to support his contention. The issue is waived. Rule 27(a)(7), Tenn.R.App.P.; Rule 10(b), Tenn.Ct.Crim.App.; *State v. Dakin*, 614 S.W.2d 812, 814 (Tenn.Crim. App.1980). In any event, this court may not interfere with a ruling made within the discretionary powers of the trial court absent clear abuse. *State v. Hopper*, 695 S.W.2d 530 (Tenn.Crim.App.1985). There is no basis for reversal on this issue.

■■■ The defendant asserts that he was denied effective assistance by the absence of counsel at his arraignment. The right to counsel attaches after a formal charge or indictment and applies to "critical stages" of the proceedings. In jurisdictions where certain rights may be waived, e.g., the defense of insanity, the arraignment qualifies as a "critical stage" requiring the presence of counsel. *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 158–159, 7 L.Ed.2d 114 (1961).

■■■ Prior Tennessee case law has not directly addressed the issue of whether the arraignment provided for by Rule 10, Tenn. R.Crim.P. is a critical stage of the proceedings requiring the presence of counsel. In *State v. Miller*, 668 S.W.2d 281, 286 (Tenn. 1984), the Supreme Court assumed, for purposes of argument only, that the defendant had a constitutional right to be represented by counsel at that time but refused to make that actual determination.

■■■ The fact that counsel is not appointed at arraignment is not *per se* a violation of an accused's sixth amendment rights. *Pryor v. Henderson*, 403 F.2d 46 (6th Cir.1968). When, however, the accused has waived a constitutional right or made an incriminating statement absent the assistance of counsel, actual prejudice may follow. Under those circumstances, the arraignment stage would be "critical" and the presence of counsel required. *See Hamilton*, 368 U.S. 52, 82 S.Ct. 157; *Pryor*, 403 F.2d 46.

Although the defendant suggests he waived any errors made before the time of the arraignment and agreed to a consolidated trial with his co-defendants, the record does not support his contentions. There is no allegation of pre-arraignment error and certainly none which would have affected the results of the trial. There was no right of this defendant to a separate trial. A severance, under these circumstances, would have been inappropriate. *See Hopper*, 695 S.W.2d 530 (Tenn.Crim.App.1985); *State v. Lunati*, 665 S.W.2d 739, 745–746 (Tenn.Crim.App.1983);

In this instance, the defendant neither waived any constitutional rights nor prejudiced himself by his plea of not guilty. There was no resultant denial of his right to counsel. *See Underwood v. Bomar*, 335 F.2d 783 (6th Cir.1964).

■■■ Although the defendant cites no authority in support of his assertion, he also claims his right to effective assistance of counsel was denied by the failure of his attorneys to call certain, subpoenaed witnesses. At trial, however, he instructed his counsel not to do so. A defendant may not be granted relief on appellate review when he fails to take action reasonably necessary to prevent or nullify the error. Rule 36(a), Tenn.R.App.P.; *See Meade v. State*, 484 S.W.2d 366 (Tenn.Crim.App.1972). The defendant, who provides instructions to his counsel, may not rely on their compliance as a basis for error on appeal. Further,

the lack of authoritative citation constitutes a waiver of the defendant's assignment of error. Tenn.R.App.P. 27(a)(7); *Dakin*, 614 S.W.2d at 814.

This issue is without merit.

## II

The defendant contends that the indictment should have been dismissed due to the bad faith of the district attorney general's office in failing to promptly respond to motions for discovery; the defendant asserts that the trial court should have required the state to identify eye witnesses.

 Rule 16, Tenn.R.Crim.P., governs discovery and provides the following sanctions for non-compliance:

(d)(2) **Failure to Comply With a Request.**—If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

Nothing in the rule specifically provides for an involuntary dismissal as a sanction for non-compliance with discovery orders or for failure to respond promptly to discovery motions. If that penalty is authorized by the rule, it is only by implication. Irrespective of whether the trial court actually possesses the authority to dismiss an indictment for failure to comply with rules of discovery, any dismissal would not foreclose a re-indictment. *State v. Freseman*, 684 S.W.2d 106, 107 (Tenn.Crim.App.1984).

 The trial court held that the facts in this case did not warrant application of Rule 16:

That there was no bad faith on the part of the district attorney's office regarding their responses to discovery in this matter. Further, the court finds that the defendant was not damaged by the delays in this case from the time of the offense until indictment, the time period before appointment of counsel and the time period for responses to discovery. Under the circumstances of this case all matters were pursued and addressed within a reasonable time period, the court having held numerous hearings along the way for purposes of monitoring and guiding the discovery process.

The defendant's chief complaint is not so much that the information was not provided before trial but that the process was delayed by the prosecution and that the trial judge should have more strictly supervised the requisite exchange of information from the state to the defense. The defendant's allegation is so general in nature that it is difficult for this court to find in this record specific incidents of delay that might have ultimately resulted in prejudice to the fairness of the trial process. The trial court is in the best possible position to determine whether the state is guilty of bad faith in either delaying or withholding legitimate discovery information. While this court encourages a timely exchange of the requisite information, it cannot find in this instance that the evidence referenced by the defendant preponderates against the finding of the trial judge. *Graves*, 512 S.W.2d 603.

 Other less drastic methods for acquiring compliance are specifically provided for by the Rule. *See, State v. Benson*, 645 S.W.2d 423 (Tenn.Crim.App.1983); *State v. Cadle*, 634 S.W.2d 623 (Tenn.Crim.App. 1982). The sanction to be applied for non-compliance must fit the circumstances of the individual case. *Cadle*, 634 S.W.2d at 625. The circumstances in this instance did not warrant a dismissal.

The defendant did not request the specified sanctions provided for by Rule 16 and does not argue their appropriateness on appeal.

The defendant also alleges the state should have provided a list of the actual eyewitnesses to the murder as opposed to the lengthy number of potential witnesses.

Tenn.Code Ann. § 40–17–106 creates the duty for the district attorney general to endorse on each indictment or presentment the names of the witnesses he intends to summon for the state. The purpose of this

section is to limit the prospect of surprise and to provide the defendant a basis upon which to prepare a theory of defense against his accusers. *State v. McCray*, 614 S.W.2d 90 (Tenn.Crim.App.1981); *Harris v. State*, 3 Tenn.Crim.App. 64, 457 S.W.2d 370 (1970); *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173 (1963).

 The statute, directory in nature, does not necessarily disqualify a witness whose name does not appear on the indictment from testifying and does not mandate the state to call all witnesses actually endorsed on the indictment. *Aldridge v. State*, 4 Tenn.Crim.App. 254, 470 S.W.2d 42 (1971); *Houston v. State*, 567 S.W.2d 485 (Tenn.Crim.App.1978). As long as there is no bad faith intent on the part of the state to lead the defendant on the proverbial "wild goose chase" by providing names of witnesses it has no intention of using at trial, there is no duty on the part of the state other than to generally list potential witnesses. While a cumbersome listing of potential witnesses often frustrates the defense in its preparation for trial, this court finds that prospect far more preferable than the production of last minute, surprise witnesses. Many of the witnesses in this instance were prison inmates and, as a result, somewhat isolated from discovery by defense counsel; even in this circumstance, however, the better alternative is for the state to advise the defendant of all possible witnesses who, even though not called, may have some knowledge of the offense. This procedure at least provides the defendant the opportunity for adequate preparation.

This issue is without merit.

### III

The state offered to dismiss the case against the defendant contingent upon his co-defendant's acceptance of a guilty plea bargain. The defendant argues this contingency was fundamentally unfair and the trial court erred in refusing to require the state to dismiss his case.

 The state withdrew its offer after the other defendants refused to negoti-

ate. An offer to plea bargain is "revocable until accepted by the trial court." *State v. Turner*, 713 S.W.2d 327, 329 (Tenn.Crim. App.1986). "There is simply no authority for the proposition that a plea agreement can be enforced prior to acceptance by the court." *Id.* (citing *Metheny v. State*, 589 S.W.2d 943, 945 (Tenn.Crim.App.1979)). Consequently, this defendant cannot complain about the state's failure to reach an agreement with the defendants when there has been no submission to the court for its approval.

The plea bargaining process in this instance was not fundamentally unfair. Contingent plea offers have been approved as an acceptable plea bargaining method. *See, Hodges v. State*, 491 S.W.2d 624, 627–628 (Tenn.Crim.App.1972). There was no obligation on the part of the trial court to dismiss on this ground.

This contention is overruled.

### IV

 The defendant argues that he was prejudiced when several correctional officers (some in uniform and some in plain clothes), positioned away from the defendants at various locations in the courtroom, responded by either standing up or reaching for their weapons when a knife presented as an exhibit was placed on the defense table for inspection.

A bench conference followed this incident wherein the court directed the state to alter its method of providing the defendants' counsel with an opportunity to inspect the weapons produced as exhibits. Counsel for Sutton requested the conference and complained of the officers' response but otherwise made no particular objection. The defendant Street made no complaint whatsoever to the procedure. No curative instruction to the jury was either requested by counsel or made by the court.

Due process requires that the accused be afforded the "physical indicia of innocence." *Kennedy v. Cardwell*, 487 F.2d 101, 104 (6th Cir.1973). The use of shackles, for example, has been specifically condemned absent certain safeguards de-

signed to assure that it would not influence the issue of innocence or guilt. *Willocks v. State*, 546 S.W.2d 819, 822 (Tenn.Crim.App. 1976). *See generally, State v. Smith*, 639 S.W.2d 677 (Tenn.Crim.App.1982).

Although other precautions were taken to minimize their exposure to security measures, the jury was well aware that the defendants were inmates at a state penitentiary and incarcerated at the time of the trial. Reasonable security safeguards are a necessary aspect of every criminal proceeding. The duty of trial courts is to minimize the potential for prejudice. While this record does not indicate that any actual prejudice resulted from the actions of the officers, it is apparent that this defendant did not preserve the error (if any existed) for review by making a contemporaneous objection. *State v. Sutton*, 562 S.W.2d 820 (Tenn.1978). This is not to suggest that counsel's failure to object or request curative instructions was a consequential oversight at the time of trial but, instead, an acknowledgment by counsel that no actual prejudice resulted by the occurrence.

This issue has no merit.

### V

The defendant next contends that the trial court improperly admitted into evidence the following:

(1) photographs of the deceased victim;

(2) testimony of a prison guard regarding the likelihood of someone reporting the victim's murder;

(3) evidence bolstering a witness' credentials before impeachment had occurred;

(4) the clothes and their contents found in two garbage bags without the establishment of a chain of custody; and

(5) testimony regarding the victim's statement that he was robbed.

[25, 26] The photographs of the deceased were properly admitted. The admissibility of photographs is a matter within the discretion of the trial court yet subject to the guidelines established in *State v. Banks*, 564 S.W.2d 947 (Tenn.1978); Rule

403 of the Federal Rules of Evidence. In order for the evidence to be admissible, it must be relevant and its prejudicial effect must not outweigh the probative nature of the evidence. *Id.*

The photographs in the case *sub judice* were properly admitted to show the nature and extent of the victim's injuries and to corroborate medical testimony. *See Withers v. State*, 523 S.W.2d 364, 369 (Tenn. Crim.App.1975); *Cagle v. State*, 507 S.W.2d 121, 132 (Tenn.Crim.App.1973); *Self v. State*, 527 S.W.2d 153, 155 (Tenn.Crim.App. 1975). The two photographs depicting the front upper body of the victim and the back of his head, were not particularly gruesome; the evidence was probative and most likely outweighed any prejudicial effect on the jury. *See Banks*, 564 S.W.2d at 951. The brutality of the attack and the willfulness of the intention to kill are proper subjects of jury determination.

The remaining challenges to the evidence have been waived by the defendant's failure to make appropriate references to the record, cite authority in support of the issues, and, in some instances, to make arguments in support of the contentions. Rule 27(a)(7), Tenn.R.App.P., Rule 10(b), Tenn.Ct.Crim.App.; *Dakin*, 614 S.W.2d at 814 (Tenn.Crim.App.1980).

This issue has no merit.

### VI

The defendant claims that the trial court erred in limiting cross-examination of various witnesses:

(1) Harold Meadows, regarding whether the victim had "dope";

(2) Meadows, regarding the relationship between the victim and Jackie Smith;

(3) Meadows, regarding a prior inconsistent statement;

(4) Cary Scoggins, regarding his drug involvement;

(5) Jim Worthington, regarding other witnesses interviewed at the prison who had not been called; and

(6) Worthington, regarding administrative disciplinary procedures.

These issues have been waived by the failure on the part of the defendant to make appropriate references to the record, cite authority in support of the issues, and, in some instances, to make supportive arguments. Rule 27(a)(7), Tenn.R.App.P.; Rule 10(b), Tenn.Ct.Crim.App.; *Dakin*, 614 S.W.2d at 814.

## VII

■■■ The next assignment of error pertains to the nature of the charging document. The defendant contends the document is a presentment, lacks the necessary juror signatures, and should have been dismissed.

Article 1, § 14 of the Tennessee Constitution provides "That no person shall be put to answer any criminal charge but by presentment, indictment or impeachment." This right to a criminal accusation by a grand jury applies to all crimes except those involving a fine of fifty dollars or less. *Capitol News Co., Inc. v. Metropolitan Government of Nashville*, 562 S.W.2d 430 (Tenn.1978).

Indictments, written submissions to the grand jury by the district attorney, constitute the most common form of initiating the prosecutorial process. Tenn.Code Ann. § 40–13–101(a). *See Crumley v. State*, 180 Tenn. 303, 174 S.W.2d 572 (1943). Presentments are "charges returned by the grand jury as a part of its inquisitional powers and do not require the sanction of the district attorney." Raybin, *Tennessee Practice*, § 9.2, at 246; Tenn.Code Ann. § 40–13–101(b). The most commonly perceived distinction as to form is the requirement that presentments be individually signed by all grand jurors while indictments must only be signed by its foreman with the endorsement "true bill." *State v. Davidson*, 171 Tenn. 347, 103 S.W.2d 22 (1937).[2]

Tenn.Code Ann. § 40–13–107 provides as follows:

**Endorsement of names of witnesses.—** It shall be the duty of the foreman of the

grand jury to endorse on the indictment, or, if it be a presentment, on the subpoena, the names of the witnesses so sworn by him, and sign the same officially, but the omission to endorse the same on the indictment or subpoena shall in no case invalidate the finding of the indictment or presentment, if the witnesses were, in point of fact, sworn by him according to law.

The function of the grand jury under either process is to determine the question of probable cause. *State v. Hudson*, 487 S.W.2d 672 (Tenn.Crim.App.1972); *State v. Marks*, 464 S.W.2d 326 (Tenn.Crim.App. 1970). This court finds no authority to substantiate the argument of the defendant that the issuance of a criminal warrant and a preliminary hearing are prerequisites to an indictment.

A review of the record demonstrates that the charging instrument is, in fact, properly labeled an indictment and contains all of the statutory requisites.

This contention is overruled.

## VIII

■■■ The defendant argues that the death penalty statute, Tenn.Code Ann. § 39–2–203, is unconstitutional.

This issue became moot, however, when the jury chose not to impose the extreme penalty. *State v. Plummer*, 658 S.W.2d 141, 143 (Tenn.Crim.App.1983). In any event, the statute has, as defendant acknowledges, been repeatedly upheld as constitutional. *See State v. Melson*, 638 S.W. 2d 342, 367–368; *State v. Dicks*, 615 S.W. 2d 126 (Tenn.1981).

This contention is without merit.

## IX

Finally, the defendant assigns as error the trial court's excuse of jurors for cause due to their views on capital punishment. The defendant argues that the procedure violates Art. 1, § 6 of the Tennessee Con-

---

**2.** Prosecution initiated by criminal information is filed in writing by the district attorney and requires the consent of the accused. Tenn.Code Ann. § 40–3–103. *See Howard v. State*, 143 Tenn. 539, 227 S.W. 36 (1920).

stitution which provides "that the right of trial by jury shall remain inviolate, and no religious or political test shall be required as a qualification for jurors."

A jury chosen by excluding veniremen for cause based on a general objection to the death penalty is "uncommonly willing to condemn a man to die." *Witherspoon v. Illinois*, 391 U.S. 510, 520, 88 S.Ct. 1770, 1776, 20 L.Ed.2d 776 (1968). The proper standard for determining when a prospective juror may be excluded for cause due to his or her general views on capital punishment is whether those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). That is, whether the juror, despite general objections, could nonetheless comply with the mandate of the law.

This standard, appropriately applied to the prospective jurors in this case, is not tantamount to a religious test and, therefore, not unconstitutional.

This issue is without merit.

Accordingly, the judgment of the trial court is affirmed.

RICHARD R. FORD, Special Judge, and JONES, J., concur.