# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 24, 2012 Session

## STATE OF TENNESSEE v. AHMAD R. MANNING, ALIAS

**Appeal from the Criminal Court for Knox County**
**No. 95615    Mary Beth Leibowitz, Judge**

---

**No. E2011-01812-CCA-R3-CD - Filed March 4, 2013**

---

On appeal, the State challenges the trial court's dismissal of the Defendant's indictment due to pre-indictment delay. The State contends that the trial court abused its discretion in dismissing the indictment because it misapplied the law in reaching its determination that the delay caused the Defendant actual prejudice. Following our review, we reverse the judgment of the trial court and remand the case to the trial court for further proceedings in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilbur, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellant, State of Tennessee.

Wade V. Davies and Anne E. Passino, Knoxville, Tennessee, for the appellee, Ahmad R. Manning, alias.

## OPINION

### FACTUAL BACKGROUND

The record reflects that the Defendant, Ahmad R. Manning, alias, was indicted on September 21, 2010. The indictment alleged that the Defendant committed the following offenses on or about September 6, 2008: the second degree murder of Cortez Underwood;

two counts of aggravated burglary; two counts of aggravated assault; employing a firearm during the commission of a dangerous felony; possessing a firearm during the commission of a dangerous felony; employing a firearm during an attempt to commit a dangerous felony; and possessing a firearm during an attempt to commit a dangerous felony. On March 3, 2011, the Defendant filed a motion to dismiss for pre-indictment delay and requested a hearing. In the motion, the Defendant proffered two grounds on which the trial court could dismiss the appeal: (1) on a constitutional ground, violation of the Defendant's right to due process; or (2) on a non-constitutional ground, pursuant to Tennessee Rule of Criminal Procedure 48(b). A hearing on the motion was held on July 7, 2011, during which the Defendant presented two witnesses in support of the motion: Knoxville Police Department Investigators Joseph Huckleby and Charles Lee. The relevant facts from that hearing are as follows.

Inv. Huckleby testified that he did not remember much of anything regarding the Defendant's case. Inv. Huckleby explained that Inv. Lee was the lead investigator on the Defendant's case and that he was assigned to investigate a robbery involving people acquainted with the Defendant that had occurred on August 30, 2008, in which the victim in the instant case and a man named Deangelo Johnson were suspects. Inv. Huckleby testified that he believed that he was present during an interview Inv. Lee conducted with the Defendant; however, he could not remember any of the details.

Inv. Lee testified that he was the lead investigator in the Defendant's case. Inv. Lee explained that he was present at the scene and that he identified and subsequently interviewed several witnesses. His investigation revealed that shots were fired at the Lonsdale Housing Complex, which resulted in the victim's death; another man, Travis Dickerson, was also shot during the incident. Inv. Lee spoke with Mr. Dickerson right after the incident. Mr. Dickerson stated that he did not know who shot him or who was involved in the shooting. That conversation was not recorded, and Mr. Dickerson has not responded to investigators' attempts to interview him further. Inv. Lee testified that the witnesses he was able to speak with suggested that the Defendant was involved in the shooting. According to Inv. Lee, Inv. Huckleby reached out to the Defendant, and he voluntarily came in for an interview. During this interview, the Defendant stated that he shot the victim in self-defense because the victim approached him, armed, demanding the return of some money stolen from him. The Defendant explained that he had robbed the victim a few days earlier in retaliation for a robbery the victim and Deangelo Johnson committed on August 30, 2008.[1] Inv. Lee testified that the Defendant stated that he shot the victim because he believed the victim was going to shoot him. Inv. Lee also testified that the Defendant mentioned that

_____

[1] There is testimony that the victims of that robbery may have been related to or closely affiliated with the Defendant.

two other individuals were present during the shooting: Deangelo Johnson and Buck Rankin.

During his testimony, Inv. Lee admitted that at least four additional witnesses had been identified but that he had not interviewed them prior to the Defendant's indictment: Deangelo Johnson, Buck Rankin, "J.J.," and Jimmy Cozart.[2] Regarding Deangelo Johnson, Inv. Lee explained that he was on the run from police and that investigators had been unable to locate him for an interview; however, Inv. Lee did locate Mr. Johnson a few weeks prior to the hearing in the state penitentiary and attempted to interview him. The conversation was brief and unrecorded because Mr. Johnson denied being at the shooting and did not "seem very interested in talking to [him] after that." Regarding Buck Rankin, Inv. Lee testified that he sought help from the Board of Probation and Parole to locate Rankin but that he had not been able to locate him for an interview. Inv. Lee testified that he did not interview Mr. Cozart or J. J. and still had not interviewed either of them at the time of the hearing.

The trial court took the motion under advisement.

On August 15, 2011, the Defendant filed a supplement to the motion to dismiss for pre-indictment delay, responding to the State's allegation at the motion hearing that the Defendant had not been prejudiced by their delay in issuing his indictment. The memorandum provided argument, legal authority, and additional documents[3] supporting the Defendant's contention that the pre-indictment delay prejudiced him. The State did not file a memorandum of law or other document in response to the Defendant's motion to dismiss for pre-indictment delay and memoranda in support of the motion.

On August 17, 2011, the trial court granted the Defendant's motion and dismissed the indictment. Relevant portions of the order and opinion state as follows:

### FINDINGS OF FACT

The undisputed facts in this case show that on the night of September 8, 2008, investigators with the Knoxville Police Department interviewed [the Defendant] about a shooting that occurred on September 6, 2008. [The Defendant] cooperated with the investigators explaining his version of the events that occurred that night. The facts show that [the Defendant] was

---

[2] Other witnesses place "J. J." and Jimmy Cozart at the scene of the incident.

[3] The Defendant included the death certificate of a potential witness for the defense who died prior to his indictment. He also included police reports naming the victim as the suspect in a shooting involving this witness.

released and was not formally charged with a crime. Reports show that investigators concluded their investigations as of May 2009. After [the Defendant's] interview about the 2008 shooting, [the Defendant] was in the State's custody seven different occasions as a result of non-violent offenses. These offenses occurred sporadically over the two years following the incident. The offenses included 6 occurrences of criminal trespass and separate public intoxication occurrences. Witnesses were identified but not interviewed. Now several are in prison and uncooperative, and at least one has disappeared. The housing has been rehabilitated with a new facade and evidence of bullet holes and slugs in the wall has been lost.

Two years after the shooting and over a year after the investigation concluded, a Knox County Grand Jury returned a 9 count Presentment against [the Defendant] regarding the 2008 shooting. Before this court is the [D]efendant's motion, filed March 3, 2011, to dismiss the presentment for prejudicial pre-indictment delay. For reasons that follow, the motion will be granted.

**FINDINGS OF LAW**

. . . .

. . . [I]f the State is aware that an offense has occurred, it becomes the defendant's burden to prove that the pre-indictment delay violates their right to due process by proving that (1) the defendant suffered substantial prejudice to his right to a fair trial as a result of the delay; and (2) the government purposely delayed to gain a tactical advantage over the defendant. United States v. Lovasco, 431 U.S. 783, 789 (1997); State v. Carico, 968 S.W.2d 280, 285 (Tenn. 1998). Accordingly, the acceptability of a pre-indictment delay will be determined by the defendant's prejudice to a fair trial and the advantage the government may have received.

**I. Substantial Prejudice to Fair Trial**

It is true that "prejudice to the accused is the most important factor," but it is also known that it is not determinative in every case. State v. Carico, 968 S.W.2d 280, 285 (Tenn. 1998). To establish a case for pre-indictment delay, counsel for [the Defendant] points out that the government had been on notice of the allegations as of September 8, 2008, but took over two years before they filed an indictment against him. Through counsel's recitation of the events,

the State was aware that Mr. Underwood had been shot, that Mr. Underwood subsequently died as a result of the shooting, and that [the Defendant] was involved. It would be premature for this court to only accept these facts in determining whether there has been an act of prejudice against the [D]efendant. The more relevant facts that led to this court's outcome were (1) the witness testimony that has faded away and has now become unavailable; (2) evidence from the scene has been destroyed, due to no fault or act of either party; and (3) the [D]efendant was in the State's custody for multiple non-violent offenses over the course of two years. The fact that the State had [the Defendant] in their custody proves that they knew where he was and still failed to charge him with a crime. More pressing is the fact that the investigation into the death of [the victim] concluded in May 2009, which was around the time [the Defendant's] first non-violent offenses occurred and landed him in the State's custody.

## II. Advantage over the Defense

There is no evidence that the State purposefully and intentionally delayed the commencement of prosecution in order to gain a tactical advantage over the defense. However, this factor alone is not dispositive in determining whether a defendant's right to a fair trial has been violated. Although, it may not have been the intentions of the State to gain a tactical advantage over the defense, it did. The State has eyewitnesses necessary to try the case, whereas the defense's witnesses are unknown and don't recall the night in question. The State has collected the evidence they needed from the crime scene, whereas the defense is reduced to the evidence produced solely by the investigators. The State knew about the offense two years prior to prosecution giving them that amount of time to prepare, whereas the defense had no idea that [the Defendant] was under investigation after the initial interview. Albeit unintentional, the State does have an advantage over the defense in this case.

. . . .

[The Defendant] has shown that the delay in the indictment caused substantial prejudice to his case, and that the government's delay, although not intentional, has provided a tactical advantage. Because the State waited so long to charge [the Defendant] with the nine felonies in the presentment, had him in custody on seven separate occasions, and failed to charge him with a crime, it is evident that [the Defendant] was prejudiced in his right to a fair trial.

The State filed a timely appeal.

## ANALYSIS

The State contends that the trial court abused its discretion in dismissing the Defendant's indictment due to pre-indictment delay for the following reasons: (1) the trial court's factual findings are not supported by the record; (2) the Defendant failed to show that the delay caused him actual prejudice; and (3) the trial court misapplied the law by dismissing the indictment despite finding that the State did not intentionally cause the delay to gain a tactical advantage. The Defendant responds that the trial court did not abuse its discretion in dismissing the indictment and that there is substantial evidence to support the trial court's decision.

The decision whether to dismiss an indictment lies within the discretion of the trial court. State v. Benn, 713 S.W.2d 308, 311 (Tenn.1986). Appellate courts "may not interfere with a ruling made within the discretionary powers of the trial court absent clear abuse." State v. Harris, 33 S.W.3d 767, 769-70 (Tenn. 2000) (quoting State v. Street, 768 S.W.2d 703, 709 (Tenn. Crim. App.1988)). Thus, we will only disturb the decision of the trial court when there is no substantial evidence to support its conclusions. See State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001).

*Pre-Indictment Delay*

In State v. Marion, 404 U.S. 307 (1971), the United States Supreme Court explained that "[t]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay . . . caused substantial prejudice to the [defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." 404 U.S. at 324-25. Our supreme court adopted the Marion approach to determining when a defendant is entitled to relief for pre-indictment delay in State v. Dykes, 803 S.W.2d 250 (Tenn. Crim. App. 1990). The Dykes court held that

> Before an accused is entitled to relief based upon the delay between the offense and the initiation of adversarial proceedings, the accused must prove that (a) there was a delay, (b) the accused sustained actual prejudice as a direct and proximate result of the delay, and (c) the State caused the delay in order to gain tactical advantage over or to harass the accused.

Dykes, 803 S.W.2d at 256 (citing United States v. Marion, 404 U.S. 307, 324 (1971)). Our supreme court reaffirmed the applicability of the Marion-Dykes rule in State v. Utley, 956 S.W.2d 489 (Tenn. 1997), noting that in "cases involving a pre-arrest delay, the due process inquiry continues to be guided by Marion." Id. at 495. The Utley court held that prejudice "cannot be presumed and instead must be substantiated by the defendant with evidence in the record" and that "the due process inquiry under Marion also requires proof regarding the State's use of the delay to gain tactical advantage." Id. A review of the applicable authorities and the record indicates that we must follow our supreme court's holding in Dykes and Utley, requiring the Defendant to show that the State intentionally delayed the indictment to gain an advantage over or to harass the accused. See Utley, 956 S.W.2d at 495; Dykes, 803 S.W.2d at 255; see also State v. Carico, 968 S.W.2d 280, 284, 285 n.4 (Tenn. 1998); State v. Gilley, 297 S.W.3d 739, 755 (Tenn. Crim. App. 2008).

In the instant case, the record reflects that the trial court based its decision to dismiss the Defendant's indictment on its erroneous interpretation of legal precedent and, therefore, abused its discretion. As articulated above, the correct test for determining whether pre-indictment delay violates the Defendant's right to constitutional due process and necessitates a dismissal of the indictment is whether the accused proved (1) that there was a delay, (2) that the defendant sustained actual prejudice as a direct and proximate result of the delay, and (3) that the State caused the delay in order to gain tactical advantage over or to harass the accused. Here, the trial court found that the State did not intentionally cause the delay to gain a tactical advantage over the Defendant. However, despite noting that it was required to find the aforementioned factors to dismiss the indictment on constitutional grounds, the trial court dismissed the indictment, reasoning "Although, it may not have been the intentions of the State to gain a tactical advantage over the defense, it did." The law in Tennessee is well-settled that when a dismissal is based on constitutional grounds, the trial court must find that the State intentionally delayed the proceedings in order to gain a tactical advantage or to harass the accused. See State v. Carico, 968 S.W.2d 280, 284, 285 n.4 (Tenn. 1998); State v. Utley, 956 S.W.2d 489, 495 (Tenn. 1997); State v. Gilley, 297 S.W.3d 739, 755 (Tenn. Crim. App. 2008); Dykes, 803 S.W.2d at 255. Thus, the trial court's dismissal of the indictment was in error.

The State also argues that the trial court abused its discretion in dismissing the indictment because its findings – that witnesses were identified but not interviewed and that evidence from the scene had been lost when the housing complex was rehabilitated – are not supported by the record. However, we conclude that there is evidence in the record to support the trial court's factual conclusions. Regarding the witnesses, there was testimony that at least three witnesses were identified but not interviewed: Mr. Johnson, Buck Rankin, and Jimmy Cozart. In his September 8, 2008 interview, the Defendant told Inv. Lee that Mr. Johnson was present at the shooting, but he was not interviewed until after the Defendant was

indicted. Although Inv. Lee testified that they were unable to locate Mr. Johnson because he was on the run from the police, the Defendant presented documentation in his supplemental memorandum illustrating that Mr. Johnson was, in fact, arrested and taken into police custody on September 13, 2008, five days after the Defendant's interview. The Defendant also presented documentation that one witness died in December 2009, months after the State had finished its investigation but before the Defendant's indictment. Regarding evidence from the housing complex being lost, Inv. Lee agreed that the housing complex had been repaired and that, presently, the Defendant would not be able to go to the scene and assess the damage for himself. We note that the State neither presented any witnesses during the hearing on this motion nor submitted a memorandum to the trial court in response to the Defendant's initial or supplemental memorandum of law supporting his motion to dismiss for pre-indictment delay.[4]

Finally, the State argues that the trial court abused its discretion in dismissing the indictment because the Defendant failed to show that he was prejudiced by the delay. The Defendant presented the death certificate of a witness, who would have provided "powerful first aggressor evidence," but she died during the two-year pre-indictment delay. The trial court also found that the evidence from the housing complex was lost and that "the defense [wa]s reduced to the evidence produced solely by the State investigator." Additionally, the trial court found that the witnesses for the defense are largely unknown, uncooperative, and do not recall the night in question, and the record supports this conclusion. In light of these facts, we cannot conclude that the trial court abused its discretion in finding that the Defendant suffered prejudice as a result of the delay because there is evidence to support that conclusion.

To justify dismissal of an indictment based on the Due Process Clause of the Fifth Amendment, the defendant must prove not only that he suffered prejudice from the delay but also that the state used the delay as a device to gain a tactical advantage. As found by the trial court, "there is no evidence that the state purposefully and intentionally delayed the commencement of the prosecution in order to gain a tactical advantage over the defense." Therefore, despite the trial court's finding of prejudice, dismissal of the indictment was in error.

However, we feel constrained to note that we question whether in reality the Marion-Dykes rule affords a defendant meaningful protection of his due process right to a fair trial in the face of unreasonable and unjustified pre-indictment delay. When faced with a similar issue regarding evidence lost by the state, our supreme court rejected the analysis in Arizona

---

[4] The trial court heard several motions in this case over a two-day period, and the witness testimony referred to in this opinion is derived from previous hearings also included in the record for our review.

v. Youngblood, 488 U.S. 51, 58 (1988), which required a showing of bad faith on the part of the government to establish a denial of the due process right to a fair trial. See State v. Ferguson, 2 S.W.3d 912, 915-18 (Tenn. 1999). In Ferguson, our supreme court recognized that proving bad faith on the part of the police would be extremely difficult. The court continued by reasoning that such an analysis substantially increased the defendant's burden while decreasing the state's burden at the expense of the defendant's right to a fair trial. Id. at 916. Instead, the Ferguson court elected to adopt a balancing approach regarding evidence that the State had a duty to preserve. Once the proof demonstrates that the State failed in that duty, the analysis moves to a consideration of the following factors in determining the consequences of the breach: the degree of negligence involved; the significance of the destroyed evidence; and the sufficiency of the other evidence used at trial to support the conviction. Id. at 917. If after considering all the factors, the trial judge concludes that a trial without the missing evidence would be fundamentally unfair, then the trial court may dismiss the charges or craft orders it deems necessary to protect the defendant's right to a fair trial. Id.

We do not see a meaningful difference in the difficulty of proving bad faith on the part of the state regarding lost evidence, on the one hand, and proving that the pre-indictment delay was a device used by the state to gain a tactical advantage on the other. We do not believe that adopting a Ferguson-type analysis would invade the state's power to determine when and against whom to initiate prosecution nor would it result in wholesale dismissal of indictments for pre-indictment delay.

CONCLUSION

The judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings in accordance with this opinion.

_____
D. KELLY THOMAS, JR., JUDGE